## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re: | Bankruptcy Case No. 16-13216 EEB |
| JULIO BARRERA,<br>MARIA MORO, | Chapter 7 |
| Debtors. | |

### ORDER DENYING MOTION FOR TURNOVER OF SALES PROCEEDS

THIS MATTER is before the Court on the Trustee's "Motion to Compel Debtors to Turnover and Account for Property of the Estate" (the "Turnover Motion"), which is opposed by the Debtors. At issue is whether the increase in the Debtors' equity in their home that occurred during their prior chapter 13 case became property of the chapter 7 estate following conversion.

## I.    BACKGROUND

The Debtors filed a chapter 13 petition on April 5, 2016.  At that time, their primary residence was located at 6815 Edgewood Way, Highlands Ranch, CO 80130 (the "home").  They scheduled the home's value as $396,606 as of the petition date. They listed the balance of their first mortgage, owed to Citimortgage Inc., as $243,649.62.  On Schedule D, they also listed "US Department of Housing & Urban Devel." as holding a lien on their residence in the amount of $92,560.00, but they did not indicate the nature of this lien.  The two liens combined totaled $336,209.62, leaving $60,396.38 in equity.  They claimed a $75,000 homestead exemption pursuant to Colo. Rev. Stat. § 38-41-201(1)(a) to fully exempt the home equity.

On June 9, 2016, the Court confirmed the Debtors' amended chapter 13 plan. The plan itself did not include any valuation of the home.  The form of plan used in this district requires a listing of the home's value only if there is non-exempt equity that must be accounted for in the section comparing what unsecured creditors could expect to receive in a chapter 7 liquidation.  But the plan did provide that Citimortgage would retain its lien on the Property, the Debtors would pay the Trustee monthly cure payments for Citimortgage's benefit on a prepetition arrearage of $4,400, and Debtors would pay regular postpetition mortgage payments directly to this lender.[1]  The plan

---

[1] The plan's only mention of HUD's lien is found in Section V, "Other Provisions," in which the Debtors indicated they would pay "$0.00" per month to this creditor over 0 months.  Neither the chapter 13 trustee

also provided that "[a]ll property of the estate shall vest in the [Debtors] at the time of confirmation."

Approximately two years later, the Debtors sold the Property for $520,000. After paying off liens and closing expenses, they received $140,250.63 in sales proceeds. About two weeks later, they converted their case to a chapter 7 proceeding. At that time, they held $100,700.12 of the proceeds in a savings account.

The Trustee alleges that he contacted the Debtors shortly after conversion to request information about the sale, but the Debtors refused to provide it. Nor have they turned over the nonexempt proceeds.[2]   Faced with non-compliance, the Trustee filed the instant Turnover Motion and Adversary Proceeding No. 18-1259 EEB, Rodriguez v. Barrera, to deny the Debtors a chapter 7 discharge, claiming that their inaction constitutes a postpetition act to conceal or transfer property of the estate in violation of 11 U.S.C. § 727(a)(2)(B).[3]   In that adversary, the parties filed briefs on the Trustee's Motion for Partial Summary Judgment. With one other issue no longer relevant to this matter, the Trustee requested a ruling on whether the postpetition increase in equity was an asset in the converted chapter 7 case. The parties agreed to hold the Turnover Motion in abeyance pending the Court's ruling in the adversary proceeding.

The Court entered its order granting partial summary judgment in favor of the Debtors, ruling that any postpetition increase in equity belonged to them following the chapter 7 conversion. But this Order did not fully resolve the case because, at that time, the parties disputed the prepetition value of the home. If the home was actually worth $520,000 on the petition date instead of the scheduled value of $396,606, then all of the nonexempt equity would belong to the chapter 7 estate, according to the Court's ruling.

Although it was interlocutory in nature, the Trustee sought leave to appeal the adversary ruling, but the Tenth Circuit Bankruptcy Appellate Panel denied that request and dismissed it. This Court then held a status conference to determine how the parties wished to proceed. Instead of scheduling a trial on the home's prepetition value, the Trustee requested leave to dismiss the adversary action with prejudice. The Debtors did not oppose that request.

---

nor this creditor objected to this treatment.   The Court surmises that this lien reflects an arrangement with HUD to be paid only on the sale of the property, without requiring any monthly payments.

[2] Instead the Debtors filed a motion to reconvert their case to chapter 13.  The Court denied that request. Subsequently, the Debtors have requested reconsideration.  The Trustee also filed a motion in the Debtors' main case for an order compelling the Debtors to turn over the information relating to the home sale and the remaining proceeds.  He also objected to the Debtors' motion for reconsideration of the Court's order denying their motion to reconvert.  The Court held the turnover motion and the Debtors' motion to reconsider in abeyance pending the resolution of the cross-motions for summary judgment.

[3] All references to "§" or "section" shall refer to Title 11, United States Code, unless expressly stated otherwise.

While the Trustee no longer wishes to deny the Debtors their discharge, he continues to seek appellate review as to the chapter 7 estate's entitlement to the nonexempt sales proceeds.  Thus, he requested that the Court enter its ruling on this same legal issue in connection with the Turnover Motion.  To remove any factual disputes, he has conceded on the record that the Court may assume that the prepetition value of the home is the same amount at which the Debtors scheduled it.  Both parties agreed that they did not want to amend the Turnover Motion or Debtors' Response or to brief the matter any further.  Thus, they have submitted the matter to the Court based on the filings they have already made in connection with the Turnover Motion and the adversary proceeding.

## II.   DISCUSSION

Congress amended § 348 to add subsection (f)(1) in 1994.  Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 311, 108 Stat. 4106 (1994).  This change was prompted by a split in authority regarding what property constitutes property of the chapter 7 estate in a case that originates in chapter 13 but later converts to chapter 7.  In relevant part, § 348(f)(1) now provides:

> Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—
>
> (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion . . . .

11 U.S.C. § 348(f)(1).

### A.   Section 348(f)(1)(A)'s Clear Implications

The meaning of subsection (f)(1)(A) is elucidated by comparing it to subsection (f)(2).  The latter provision states: "If the debtor converts a case under chapter 13 of this title to a case under another chapter of this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion."  The difference between these two subsections is the date of determination.  With a good faith conversion, the measuring date is the petition date and, therefore, prepetition assets are included but postpetition assets are not.  If the conversion reflects bad faith, then both pre- and postpetition assets will be included in the chapter 7 estate.  Thus, Congress has given the debtor who attempts to repay his debts in chapter 13, albeit unsuccessfully, a sort of guarantee that he will be no worse off for having tried a repayment plan, as long as he converts in good faith.  This guarantee comes in the form of allowing the debtor to retain his postpetition assets, which of course he would never have had to contribute if he had originally filed a chapter 7 case.

3

Subsection (f)(1)(A) also clarifies that the debtor need only turnover the prepetition property "that remains in the possession of or is under the control of the debtor on the date of conversion." This language conveys two things. If prepetition property has been consumed or transferred during the chapter 13 proceeding, the debtor has no obligation to replenish it for the benefit of the chapter 7 estate. It also addresses the fact that there will likely be no "property of the estate" on the date of conversion. With confirmation of the chapter 13 plan, unless the plan expressly states otherwise, all property of the estate vests in the debtor. 11 U.S.C. § 1327(b). Post-confirmation, it reverts to its pre-bankruptcy status as "property of the debtor." Nevertheless, if the debtor retains possession or control over it at the time of conversion, it must be surrendered to the chapter 7 trustee.

A strict reading of this subsection might suggest that the Debtors in this case have no obligation to turn over to the Trustee any of the sale proceeds regardless of the home's prepetition value. The home was a prepetition asset but on the date of conversion the Debtors no longer had possession of or control over it because they had sold it. However, this Court has not found any reported decision that has arrived at that conclusion. Instead, courts have treated the proceeds from a pre-conversion sale of property as property of the estate "as of the petition date" under § 348(f)(1)(A). Some have reached this conclusion by reasoning that § 541(a)(6) includes in the definition of property of the estate "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." *See, e.g.*, *Bogdanov v. Laflamme (In re Laflamme)*, 397 B.R. 194, 202 n.7 (Bankr. D. N.H. 2008) (property of converted estate includes proceeds from commissions earned pre-bankruptcy that debtor received during chapter 13 case); *Wyss v. Fobber* (*In re Fobber*), 256 B.R. 268, 273 (Bankr. E.D. Tenn. 2000) (converted estate includes proceeds of tractor debtors sold during chapter 13 case); *Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 426 B.R. 52, 62 (E.D.N.Y. 2010) (converted estate includes proceeds from truck debtor sold during chapter 13). Some courts have assumed, with little or no analysis, that the proceeds and the property are one and the same for purposes of § 348(f)(1)(A). *See, e.g., In re Niles*, 342 B.R. 72, 73 (Bankr. D. Ariz. 2006) ("*Niles*") (addressing proceeds from home debtor sold during chapter 13 case). And, in some cases, the parties have simply conceded this issue. *See, e.g., Warfield v. Salazar (In re Salazar),* 465 B.R. 875, 878 (9th Cir. BAP 2012) (converted estate includes tax refunds attributable to prepetition period that debtors received during chapter 13 case).

Such is the case here. Neither party disputes that this subsection would require the Debtors to turn over any non-exempt funds attributable to the prepetition value of the home. And since both now agree that the home was only worth $396,606 on the filing date and that the greater amount realized at sale was attributable to a postpetition increase in value, the only dispute left is whether a postpetition increase in value of a prepetition asset constitutes a postpetition asset excluded from the chapter 7 estate by § 348(f)(1)(A).

4

**B.      § 348(f)(1)(A)'s Latent Ambiguity: Two Schools of Thought on Whether PostPetition Increase in Equity during a Chapter 13 Case Becomes Property of the Chapter 7 Estate upon Conversion**

The Trustee argues that an increase in value that occurs postpetition is not a "postpetition asset."  He advocates for an interpretation of § 348(f)(1)(A) that reads its reference to "property" existing on the petition date to be the physical thing, the bricks and mortar of a home, and not the home's value.  When the Debtors sold the home, they received "proceeds" directly tied to it and those proceeds now represent the same prepetition asset under § 541(a)(6).  According to the Trustee, any postpetition change in its equity is not newly acquired postpetition property but is inseparable from the home itself.

### 1.      PostPetition Increase *is* Property of Chapter 7 Estate

The Trustee's position has support.  In *In re Goins*, 539 B.R. 510, 515-16 (Bankr. E.D. Va. 2015), the court held that the post-conversion chapter 7 estate included the postpetition appreciation in value because the property itself was initially property of the estate under § 541(a)(1) and § 541(a)(6) provides that all proceeds of property of the estate are also property of the estate.  It rejected the notion that § 348(f)(1)(A) controlled because "the equity attributable to the postpetition appreciation of the property is not separate, after-acquired property, [rather it] is inseparable from the real estate, which was always property of the estate under Section 541(a)." *Id.* at 516.  *See also Potter v. Drewes (In re Potter)*, 228 B.R. 422, 424 (8th Cir. BAP 1999) (estate's interest in the converted case is the entire asset, including any changes in value that occur postpetition); *Vu v. Kendall (In re Vu)*, 245 B.R. 644, 647-48 (9th Cir. BAP 2000) (upon conversion from chapter 11 to chapter 7, appreciation belongs to estate); *Kakos v. Stevenson (In re Kakos)*, 2015 WL 5212033 (E.D. Mich. Sept. 4, 2015) (equity in real estate created by large postpetition, pre-conversion payment belongs to chapter 7 estate); *In re Peter*, 309 B.R. 792 (Bankr. D. Or. 2004) (equity created by pay down of liens in chapter 13 belongs to chapter 7 trustee).  Judge Romero in this district has now joined the ranks of these courts in his unpublished *In re Hayes* decision, Case No. 15-20727 (Bankr. D. Colo. March 28, 2019).

### 2.      PostPetition Increase *is Not* Property of Chapter 7 Estate

A greater number of courts interpreting these same statutes have reached the opposite conclusion.  In *Niles*, the court confronted facts identical to those in the present case.  At the time the debtor filed her chapter 13 case, she owned a home with no non-exempt equity.  The bankruptcy court confirmed her plan and later the debtor sold her home and received proceeds that exceeded the applicable homestead exemption.  A couple of months later, while she still had possession of the proceeds, the debtor converted her case to chapter 7.  The *Niles* court concluded, that "[w]hile admittedly an increase in value to real property is not the same as after-acquired property as that term is traditionally defined under bankruptcy law, it is similar in nature and justifies the same result." *Niles*, 342 B.R. at 76.  Moreover, "[d]enying the debtor the increase in value

5

upon conversion would similarly act as a disincentive to filing chapter 13 in the first instance." *Id.*

The *Niles* court's most persuasive analysis focuses on the language of § 348(f)(1)(A) and its legislative history discussed below.  Relying on this, many other courts have reached the conclusion that any postpetition increase in equity in a prepetition asset, whether from appreciation or from the debtor's repayment of secured debt, is not property of the estate on conversion from chapter 13 to chapter 7.  *See In re Hodges*, 518 B.R. 445, 447-49 (Bankr. E.D. Tenn. 2014); *In re Robinson*, 472 B.R. 854, 856 (Bankr. M.D. Fla. 2012); *Leo v. Burt (In re Burt)*, 2009 WL 2386102 (Bankr. N.D. Ala. July 31, 2009); *Kendall v. Lynch (In re Lynch)*, 363 B.R. 101, 106-07 (9th Cir. BAP 2007); *In re Pruneskip*, 343 B.R. 714, 717 (Bankr. M.D. Fla. 2006); *In re Woodland*, 325 B.R. 583 (Bankr. W.D. Tenn. 2005*; In re Boyum* 2005 WL 2175879 (D. Or. Sept. 6, 2005); *In re Nichols*, 319 B.R. 854 (Bankr. S.D. Ohio 2004).[4]

### 3.    Resort to Legislative History to Resolve Ambiguity

These two divergent views highlight an underlying ambiguity in § 348(f)(1)(A).  When Congress refers to "property . . .  as of the date of the filing of the petition," does it mean the property *as it existed* on that date?  In other words, when the term "property" is modified by qualifying language that ties it to the petition date, is that a reference to the property with the attributes it had on that date?  Consider this hypothetical: assume that a debtor's prepetition home had four bedrooms, two bathrooms, an old kitchen, a value of $300,000, with a mortgage lien against it of $250,000.  Two years later, the debtor, who is a builder, has renovated the home himself, adding a fifth master bedroom suite, a third bathroom, and a new kitchen, all for a total cost of $50,000.  His changes to the home have increased its value by $100,000.  He has also reduced the principal balance of the mortgage loan by $25,000 and realized appreciation in value due solely to market conditions of $100,000.  His home is now worth $500,000 due to this combination of factors and his equity interest is $275,000 instead of the petition date amount of $50,000.  When Congress stated that prepetition property becomes property of the chapter 7 estate, did it mean this home, regardless of what has changed since the petition date? Or did it mean this home with the attributes and value it had on the petition date?

In *In re Hayes,* the court concluded that the statute's reference to "property" unambiguously referred to the physical thing, the home. It said the debtor's equity interest in the home was not a separate thing. It relied on an old Supreme Court tax case, *Crane v. C.I.R.*, 331 U.S. 1 (1947).  In that case, the taxpayer argued that she only had to pay a capital gains tax based on the difference between her basis in the

---

[4] This Court agrees with the Court in *Hayes* that the cases relying solely on pre-BAPCPA § 348(f)(1)(B) and the concept of implicit valuation, including *Warren v. Peterson*, 298 B.R. 322 (N.D. Ill. 2003 ) and *In re Slack*, 290 B.R. 282 (Bankr. D.N.J. 2003), are no longer persuasive on the question of what constitutes property of the estate when a debtor converts his case from chapter 13 to chapter 7.

property and the amount for which she later sold it. Since no equity existed at the time of her acquisition, she claimed her basis in the property was $0. The Supreme Court rejected this reasoning, concluding that "property" does not mean the same thing as "equity." It ruled that the property referred to the physical thing, "the aggregate of the owner's rights to control and dispose of that thing." *Crane*, 331 U.S. at 6. It further stated that "[s]trong countervailing considerations would be required to support a contention that Congress, in using the word 'property,' meant 'equity,' or that we should impute to it the intent to convey that meaning." *Id.* at 7. Thus, the *Hayes* court concludes that the "property" is the thing as a whole, and changes to its value are not separate or newly acquired property.

But the *Hayes* court also says that the term "proceeds" in § 541(a)(6) "is sensibly read as encompassing postpetition increases in value, regardless of whether an increase is a product of a reduction in the amount of a lien, the passage of time, or some other market event." *In re Hayes*, Case No. 15-20727, slip op. at 6 (Bankr. D. Colo. March 28, 2019) (*quoting In re Celentano,* 2012 WL 3867335, at *5 (Bankr. D. N.J. Sept. 6, 2012)). Thus, in one breath, the court states that we cannot interpret equity as a thing separate from the property itself for purposes of interpreting § 348(f)(1)(A), but we can consider it to be a separate thing in interpreting what "proceeds" means under § 541(a)(6). And the reason it must interpret proceeds in this manner is because, if a postpetition increase in value is not "proceeds" of the property, what else would include it in property of the estate under § 541(a)? With limited exceptions not relevant here, § 541(a) states that the estate is comprised of the debtor's property interests "as of the commencement of the case." The *Hayes* line of cases say that the postpetition changes are included in the estate because they represent "proceeds" of the prepetition asset. They are separate enough to be proceeds but not separate enough to be excluded from the estate upon conversion under § 348(f)(1)(A).

Despite this incongruity, the Court acknowledges that it is plausible to interpret § 348(f)(1)(A)'s reference to prepetition property in this manner. On the other hand, it is also reasonable to interpret this statute as a reference to the property *as it existed* on the petition date. This latter interpretation fits well within the context of the Bankruptcy Code as a whole. Numerous statutes in the Code freeze the relative rights of the debtor, the creditors, and the estate as of the petition date. The debtor's exemption rights are determined based on the value of the asset on the petition date. Section 522 allows a debtor to exempt certain assets up to a specified dollar amount of value. It defines "value" as the fair market value *as of the date of the filing of the petition."* 11 U.S.C. § 522(a)(2) (emphasis added). To the extent a claim is not supported by a lien on an asset of the debtor on the petition date, it is deemed to be an unsecured claim against the estate that will no longer accrue interest. *Id.* §§ 502(a)(2), 506(a)-(b). The claim's status is not only frozen in amount, but the creditor is prevented from taking any action to acquire a new lien postpetition. *Id.* § 362(a)(4). An existing security interest that a creditor holds is cut off as of the petition date, preventing that creditor's lien from attaching to property that the estate or the debtor acquires postpetition. *Id.* § 552(a). Moreover, unless a specific statute expressly states otherwise, the bankruptcy estate is only comprised of the debtor's interests held on the date of the petition. Since these statutes and many more freeze the parties' relative rights as of the petition date, it is not

illogical to assume that Congress intended to freeze the estate's rights in the debtor's prepetition assets at their prepetition values.

These two lines of analysis demonstrate that § 348(f)(1)(A) has a latent ambiguity despite its superficial clarity.  "A statute is ambiguous if it is reasonably susceptible to more than one interpretation . . . or capable of being understood in two or more possible senses or ways."  *Nat'l Credit Union Administration Board v. Nomura Home Equity Loan, Inc.,* 764 F.3d 1199, 1226 (10th Cir. 2014) (internal citations omitted).  When a statute is ambiguous, resort to extrinsic aids is permitted.  A statute's legislative history, including all statements made during legislative consideration of the original bill from the time of its introduction until its final enactment, is such an extrinsic aid that courts are permitted to consider.  When legislative history is without probative value, is contradictory to the language as enacted, or is itself ambiguous, then the legislative history will not control.  But consulting the legislative history is never improper.  The Supreme Court has noted repeatedly that, "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'"  2A Norman Singer & Shambie Singer, *Sutherland Statutory Construction* § 48:1 (7th ed. 2014) (quoting *Train v. Colo. Public Interest Research Group, Inc,* 96 S. Ct. 1938, 1942 (1976)).

With § 348(f)(1)(A), the legislative history is especially illuminating.  The House Report indicates that § 348(f)(1)(A) was enacted to:

> clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 . . . any property acquired after the petition becomes property of the estate, at least until confirmation of a plan.  Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate do not apply to chapter 7.  Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.

> These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings.  For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating [another] $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily).  If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in [non-exempt] equity for the unsecured creditors and the debtor would lose the home.

This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991) and adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir. 1985).  However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

H.R. Rep. No. 103-835, at 57 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3366.

If Congress was intending its use of the term "property" in § 348(f)(1)(A) to refer to the entirety of the home itself, without regard to any postpetition changes to it, then these statements certainly do not convey that thought.  According to this legislative history, one of the principal reasons for the enactment of this new provision was Congress' concern that the chapter 7 trustee was getting the postpetition increase in equity in the debtor's home. These statements reflect that a proper interpretation of "property" is the property *as it existed on the petition date*, with all its attributes, including the amount of equity that existed on that date.  That interpretation gives purpose and meaning to this new statutory provision that is not conveyed by § 541(a) alone.

Despite this legislative history, one could nevertheless attempt to distinguish between increased equity that arises from the debtor's repayment of secured debt from an increase that results from a change in market conditions. But this Court cannot see any language in § 348(f)(1)(A) or elsewhere in the Bankruptcy Code to support such a distinction.  Moreover, the broader concept that the legislative history points toward is Congress' intent to leave a debtor who attempts a repayment plan no worse off than he would have been had he filed a chapter 7 case at the outset.  If a debtor filed a chapter 7 case, and his trustee did not sell his home, then he would enjoy the future increase in value realized by a change in market conditions in the years following his chapter 7 filing.

One of the leading sources of commentary on chapter 13 has expressed its view of § 348(f)(1)(A)'s legislative history that:

it seems to have been congressional intent to take a snapshot of the estate at the filing of the original Chapter 13 petition and, based on that inventory, include in the Chapter 7 estate at conversion only the portion that remains in the possession or control of the debtor. The spirit of § 348(f)(1)(A) is best captured by a rule that property acquired by the Chapter 13 estate or by the debtor after the Chapter 13 petition does not become property of the Chapter 7 estate at a good-faith conversion.  The method of acquisition after the Chapter 13 petition should not matter: post-petition property does not become property of the Chapter 7 estate at conversion, whether acquired with earnings by the debtor, by transfer to the debtor—for example, an inheritance after 180 days after the petition—or by appreciation in the value of a pre-petition asset.

9

Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, § 316.1, at ¶ 26 (4th ed. 2004).

### C.     Public Policy Implications

By this legislative history, Congress has clearly evidenced its intent to incentivize chapter 13 filings by ensuring that debtors will be no worse off than they would have been had they filed for chapter 7 at the outset.  But does allowing the debtor to keep the postpetition increase in equity provide the debtor with a windfall?  What about the hypothetical debtor who renovated his home, paid down his mortgage, and enjoyed an uptick in market conditions to realize $275,000 in equity while the creditors in his converted chapter 7 case were not fully repaid?  Why should he realize the benefit of $200,000 in non-exempt equity?   The answer lies in the difference between the fundamental bargain in a chapter 7 versus a chapter 13 proceeding.

In chapter 7, the debtor trades his non-exempt assets for his discharge.  In chapter 13, he keeps his assets, but trades his postpetition income for his discharge. David Gray Carlson, *Modified Plans of Reorganization and the Basic Chapter 13 Bargain*, 83 Am. Bankr. L.J. 585, 599-600 (2009).  In a case converted from chapter 13 to chapter 7, it would violate these general principles if the chapter 7 trustee were to reap the benefit of both the debtor's non-exempt assets and his chapter 13 postpetition income.  And he would do so in every case in which the debtor cured his mortgage and paid down its balance over the years he spent in a chapter 13 case before conversion.

The *Hayes* court relied on several cases that stand for the proposition that the chapter 7 estate is entitled to the benefit of any postpetition increase in equity attributable to property of the estate.  *E.g. In re Celentano,* 2012 WL 3867335 (Bankr. D. N.J. 2012); *In re Prospero*, 107 B.R. 732, 736 (Bankr. C,D, Cal, 1989); *In re Croteau*, 2001 WL 1757049 at *1 (Bankr. D. N.H. July 19, 2001); *In re Shipman*, 344 B.R. 493, 494-95 (Bankr. N.D. W.V. 2006); *In re Paoella*, 85 B.R. 974 (Bankr. E.D. Penn. 1988). The Court agrees with this general proposition.  If the chapter 7 estate is left open for some period of time, and the assets appreciate or the liens are reduced during this period, then the chapter 7 estate will reap the benefit of that increase in equity. Because of this, any debtor's lawyer worth his salt will file a motion to abandon the asset under § 554 early in the chapter 7 case if it looks like the estate will remain open for a significant period of time.  Not doing so would be tantamount to malpractice.  The debtor would be foolish to continue making payments on his home if the chapter 7 trustee still has the ability to sell it.  Filing a motion to abandon serves to push the trustee to make a decision as to whether this asset has non-exempt value for the estate, but it has to be done before the postpetition equity has increased.  In *Celentano,* the debtors waited more than one year to file the motion to abandon and significant postpetition equity had accrued due to the postpetition reduction of the liens by $250,000.  While they argued that the court should grant abandonment based on the prepetition home value, the court ruled they were a day late and a dollar short in making this request.

But in a typical chapter 7 case, the trustee will not have the opportunity to realize significant postpetition increases in home equity due to either prompt closure of the case or the debtor's filing of a timely motion to abandon.  Thus, allowing the debtor to keep the pre-conversion increase in equity does not render the chapter 7 estate worse off; it merely prevents the chapter 7 trustee from reaping a windfall.  It allows the fundamental bargains of chapter 7 and 13 to remain in place.

## III.   CONCLUSION

For the foregoing reasons, the Court hereby ORDERS the Trustee's Motion for Turnover is DENIED.

DATED this 13th day of January, 2020.

BY THE COURT:

_____
Elizabeth E. Brown, Bankruptcy Judge